Looks like we have counsel for our second case on the screen and let me call the cases 21-2019 Northern New Mexico Stockman's versus United States Fish and Wildlife and going first for the appellant is Mr. McCoy. You may proceed. Thank you your honor. May it please the court Jeffrey McCoy for the Ranching Associations. New Mexico Cattle Growers Association This court held that the baseline approach to analyzing the economic impacts of the critical habitat designation is not in accord with the language or purpose of the Endangered Species Act. This court has never overturned that holding. That holding remains good today and that holding remains good today your honor because the same problems identified in New Mexico cattle growers persist in this case. In this case demonstrates some of those problems. The baseline approach systemically ignores costs of critical habitat. As this court noted and in fact some of the same costs that this court noted in New Mexico cattle growers are the same costs that were ignored here. In footnote three of the this court's opinion it noted that the Wildlife Service ignored costs of fencing. The same thing happened here and it and these are costs of critical habitat. If you look at the economic analysis which is on page 128 of our starting at 128 of our appendix the economic analysis points out fencing and it points it out that it will be go. It's defined by the critical habitat. Isn't the fencing isn't fencing included in I think the 22 million that is the cost that was associated with the designation decision with respect to units three and four? Only on the occupied portions only on the unoccupied portions your honor and what so it reduces the cost based on what might happen absent the critical habitat and that's where the problem is is that these costs are defined by the critical habitat. They are calculated by the critical habitat but then they are ignored in occupied they are reduced or ignored in the occupied portions because they may also they may also at some point be associated with that and so it ignores the these costs which are costs of critical habitat because they might also be costs of of the listing and that your honor is yeah why why wouldn't why wouldn't the on the occupied portions why wouldn't the listing decision drive potential fencing costs and the statute looks for you know kind of additional economic consequences of the habitat designation but at least on the forest services occupied lands would it seems that the listing drives the cost not the designation of habitat isn't isn't that right? It may or may not your honor and that's a separate question but the the baseline approach just assumes for any for any occupied we're going to ignore those costs and what results is a perfunctory you're not you're not ignoring you're not ignoring the cost the costs are attributable to listing and the statute looks at the cost attributable to critical habitat designation those seem like you know two different aspects of the problem here and if you're if it's a comparative assessment between you know designation before and designation afterwards I don't think it seems illogical to look at the costs associated with listing that you know you might look at the cost but then you you'd eliminate them because what you're looking at are the additional costs attributable to designation you know why why isn't that a a more logical interpretation of what they're required to do under the statute? Well well your honor first costs can have costs can have two causes and first off it's undisputed that these are costs of critical habitat because they're defined by the critical habitat now the fish and wildlife assumes without explanation it assumes that these costs would also be attributable absent any critical habitat but that is an assumption and the service doesn't show its work and what results is a perfunctory analysis for occupied critical habitat and as we quote as we cite on page 27 of our opening brief for occupied critical habitat the fish and wildlife service says the exact same thing for for occupied critical habitat it says the costs are minimal costs of further section 7 consultation and it repeats this and repeats and repeats this what it does is a perfunctory analysis but congress in response to tba versus hill wanted informed decision making wanted the fish and wildlife service to make informed decisions actually look at the consequences of its actions but what has resulted from the baseline approach is a perfunctory analysis and it thus it renders it idle that the requirement the economic impact requirement and for that reason your honor the the holding in new mexico cattle growers remains good law it was correct then it is correct now why don't you think the change in the regular regular the regulations language um cures the problem that we had in in the first case well your honor first i would start with what the holding was in that case and the holding was that the baseline approach is not in accord with the language and intent of our language and purpose of the esa now this court had many different rationales for that um yes this court did point out to the the regular the regulation about defining adverse modification and jeopardy this court also pointed out to the attitude that critical habitat is duplicative and unnecessary and that attitude is fairly reflected in the services actions now furthermore your honor i would point to where the statutory argument for the baseline approach came from in new mexico cattle growers as this court noted the primary statutory argument for the baseline approach was the esa's provision that provides that listing determinations will be based solely on the best scientific and commercial data available this court rejected the argument correctly that that provision requires the baseline analysis and the there hasn't been any change to the interpretation of that provision either well because in in the the in the decision i mean the holding is because economic analysis done using the fws's baseline is rendered essentially without meaning by the similarity in the two definitions we hold i mean i don't think you can eliminate the reasoning from that holding no your honor but uh and i do think that that reasoning still the reasoning still applies here because as i said it is essentially without meaning yes before service before had one sentence that said there are no costs now the sentence is there are minimal costs and so it by saying that that is now a meaningful economic analysis is putting form over function i'm still here here the method here the methodology here came up with 30 million in economic costs i mean so um they are doing some work i think your argument is that they underestimated the the economic um consequences of designation right through this methodology but it's it's doing some work it's doing 30 million dollars worth of work yes your honor but that that 30 million dollars comes from the unoccupied portions it stills rendered meaningless for the occupied portions and congress couldn't have intended for there to be a meaningless occupied meaningless analysis for occupied critical habitat because what it was responding to in tba versus hill was occupied critical habitat and so if if you i mean if you turn that on its head you would render meaningless the instruction that you not consider the economic impact in listing because when you're listing in and then dealing with an occupied area it's very difficult to if you consider the economic impact on the designation of that critical habitat it it necessarily affects the economic impact on the listing decision because if you can't protect the species your honor that is the argument that this court rejected that the habitat enlisting in we rejected it because at that time there was no difference but but your honor if you are defining purely by habit if you're if you're equating habitat enlisting it comes up with the same problem in that you are just reduced you're equating them and you're not finding any economic impacts you're not finding any wouldn't some form of fencing be required for the occupied areas even if they weren't designated critical habitat maybe maybe not your honor that would go through what for the section 7 consultation what would be reasonable and proven alternative it might be but that is that's a separate question i mean for what will come up through section 7 consultation for listing and what would come up with section 7 consultation for critical habitat and we have a more well-defined what the consequences of the critical habitat are and that's what the economic analysis is supposed to do for critical why why wouldn't it be the same same question either before or after designation and and therefore that but at that that number ought to be disregarded for the additional designation costs well your honor i don't think that you can just make the assumption and what what the fish and wildlife service needs to do is show its work i mean but in the economic analysis it just says we assume occupied is going to be the same thing rather than showing its work i think i know how the case switch over to the oh go ahead go ahead judge phillips what i'm trying to still figure is i i understand how this case would turn out if it were 2002 a year after new mexico cattle growers but we do have this change and are you saying that mexico cattle growers makes any rule or regulation that the service might promulgate they can't fix that or are you saying that this particular one is deficient in some way in fixing it and if so how what would the proper rule have said well your honor i the the rule i doesn't fix the problems and the baseline analysis still leads to perfunctory economic analysis it still leads to exclusion of costs and um that's why i think that's why we argue we believe that the the language purpose of the esa does not allow for the baseline analysis but your honor even assuming that it does this goes to our point about gutierrez that um the fish and wildlife service was still bound by this court's decision now this court because it has not exercised its function under chevron to determine whether it's so your honor even if it was allowed even if this was a permissible definition or permissible interpretation of the statute then under gutierrez in this case in this designation the fish and wildlife service was still bound by this court's previous is it different gutierrez in that they're there it didn't go through rulemaking formal rulemaking whereas here it did i don't think so your honor because as this court said um what is whether or not this court has discharged its duty under chevron to determine whether there is whether the the whether the statute is ambiguous but in in gutierrez we're talking about rights of individuals the um the person who's in the united states and there was a clear interest in in protecting due process rights here this doesn't this isn't a right that any individual has it's instructions to the forest service of how to perform their job and the rule was promulgated and passed well before their attempt to apply it in this circumstance so i don't really see that we've got a retroactivity issue at all in this case well your honor while due process interests and the amount of process that's due will depend on the interests there is still an interest in bodies that are then in people that are going to be regulated in ranchers that are going to be but they're certainly for due process purposes it went through full rulemaking right but your honor that was inconsistent with not only this court's decision but what when this process started the fish and wildlife service recognized that it had to do a coextensive analysis and then that switched in the year go ahead i would like to reiterate our request in the final section of our briefs that this court vacate section 3d of the district court's order to ensure that the judgment remains within the proper scope of the litigation before you get there i did have some questions on the on your water rights argument um how how are your stock water rights affected or diminished or occupied federal lands uh well under united states versus mexico your honor that um stock water rights can be held on forest service land um there is a right i i spot you that you you've had them for 100 years right the clients have yes my question is how does how does the designation injure those water rights because i thought your argument was a failure to evaluate the economic impact of designation on those water rights and my question is what what's the injury the diminishment of the right what what specifically did they overlook well your your honor what they analyzed again is goes with fencing and with cattle guards and with that and what they did is they the for the fish and wildlife service looked at the um the cost to forest service of building those but they didn't any impact that would have on ranchers and um and having to move cattle to different okay i was asking about the water is there any diminishment in the water right i mean that does depend on how it can access it and that and that whole aspect of the problem was ignored rather than um evaluated and that was the essential problem your honor i i am over my time uh if there are no that's a good i just want to i just want to understand um why the why the a change in access would necessarily affect the stock water right well and that i think that that keys in your taking argument also well your honor i mean i think if the if they were fully prevented from accessing any water i i think that we would all agree that that would that would be a cost and so part of the issue is analyzing how much water how is this going to affect um but also in terms of in many cases with how this limited access is almost removal of access because there isn't enough range to access the water for all of the cattle needed and this is a part of the problem that just was not analyzed and so maybe it is did they consider that there might be reduced um aum's animal unit months didn't they didn't they conclude that there would be some diminishment of the ranchers ability to graze as many cattle after designation yes your honor and that may and again maybe there are is some overlap there but that's not what the forest the fish and wildlife service said it reduced its aums based on the critical habitat without even incorporating or considering the water rights for it um instead it just simply said we're not studying water rights because we're not designating private land um if they had said well that's incorporated in our reduction of aums if they had explicitly said that then that at least would have been a reasoning recognizing the potential problem all right council thank you your thank you house expired um let's hear from the apolis and i think going first is miss on behalf of the federal government uh for the court's awareness i will try to take about 11 minutes of the time that's been allotted to the apolis there's no dispute in this case that the fish and wildlife service had authority under the endangered species act to designate as critical habitat for the endangered jumping mouse all of the units of land that are at issue in this appeal including those that overlap with a small percentage of federal grazing allotments used by the association's members the only question is whether the service abused its broad discretion when it opted not to exclude from the designation certain units that meet the statutory criteria for inclusion and the service did not abuse its discretion here i think if i could just a small piece of context i think to put these issues in perspective based on the record here the record shows and no one has disputed that the new mexico meadow jumping mouse native southwestern species needs more suitable habitat if it's going to become viable again it may even need more suitable habitat if it's going to survive the next 10 years listing alone does provide some protection for the habitat of the species under section 7 of but that protection is primarily limited to the isolated patches of habitat that the dwindling populations of the mouse presently inhabit all of the other areas that the service has deemed essential to the conservation another finding that no one has challenged which makes up the vast majority of the designation here depend on inclusion in the designation or protection if i could stop you there um are if if they're if the occupied areas are um listed as critical habitat um i think um opposing council is right that under this methodology there would be no incremental cost arising from the critical habitat designation or maybe ask a little different way for occupied areas what incremental costs are there and what did and what did the service find in this case certainly your honor so the the service did find incremental costs from the designation of occupied habitat here admittedly fewer costs significantly fewer costs than in unoccupied habitat yeah a lot a lot fewer yes i you know i would point your honor specifically to pages 128 and 132 of the excerpts of record which deals with the added administrative costs of section 7 consultations um for doing uh um section 7 consultations on occupied critical habitat i would also point to pages 113 through 120 which deals with the perceptional effects um potential market value effects on property um based on the fact of versus occupied habitat what the service found wouldn't wouldn't all those costs really wouldn't all those flow really from the listing and and not from the designation and you know in a case like this we have 30 million on one side of the ledger and you know effectively zero on the other side depending on whether it's occupied or not and those non-occupied areas are you know quite small compared to the you know geographically quite small compared to the occupied areas first of all your honor just with regard to that very last point court in fact the vast majority of the designation here is unoccupied um you know i think it i would say with regard to units three and units four we're talking about of the total um designations which are about 2700 and 1900 acres respectively we're talking about about 27 and about 20 acres that are occupied all the rest is unoccupied that being said the effects that the service found here stemming from occupied critical habitat were things that it identified would happen because of its designation as occupied critical habitat that would not occur based on listing alone and again those are the added administrative costs in a section 7 consultation it's true that an occupied area a section 7 consultation for federal action would probably be required anyhow but there would still be additional administrative work and considerations that the agency would need to do when it's happening in a in a designated critical habitat even an occupied one and again those perceptional effects that that don't stem from listing but stem from sort of the fact that the land um bears this particular um designation now i will acknowledge don't you don't you think don't you think it was it was air you know the on the water rights issue um they do have um you know right under new mexico appropriation law to access to water on on these occupied lands and the service completely failed to consider that and it seems obvious to me that there's i'm going to be a potential impact on their water rights the service may change the point of traditional diversion or access to the stock water you know to a less favorable location you know and things can cascade from there why wasn't it erroneous for the service and not to at least look at it and making it make an economic evaluation here they just said we don't need to look at it well your honor with respect i don't think that's exactly what the service did the service said that it was not going to determine whether people in fact have a a water right but it still looked at the potential impacts on access to water sort of regardless of whether there's a a proven water right there or not what it did specifically based in large measure on comments that it received from a forest service who administers these allotments is taken to account the costs that would be required to ensure that you know any fencing or other conservation measures that are put in place that even with those measures there would still need to be steps taken to ensure that ranchers don't lose access to water and the service recognized that you know it on a i would point the court to page 364 of the excerpts of record the court the service specifically recognized um that you know it had received some comments that said that there could be potential impacts to ranchers um simply from having to change water source it acknowledged that it recognized that that's in the record it simply found that those um that the the costs here were not disproportionate um given the incremental value of designating this habitat to for a species that is you know on the brink of not surviving the decade um well you know it just seems to me like that would be one of the most valuable bundles of sticks that the ranchers would obtain through their permits it's like you know if i had if to mine gold on those lands and um it you know the question if i lost a part part part of the right to mine gold um it seems to me that that's got a tangible and measurable um economic value that you know it would be somewhat speculative i suppose but you know a lot of these a lot of the costs by your contractor were you know based on you know making reasonable assumptions but it seems to me like it would affect their their property right to access and that that's probably has an economic value that the service you know how to evaluate is one of the costs of designation well your honor i think that the issue here is that the service did take into account the cost of ensuring that there is no lost access to water and given that it took into account the cost of additional costs i think this record you know frankly could be different if you know the service hadn't received those comments from the forest service and hadn't amended its analysis and response and sort of was just you know assuming um that it could just put up a fence and that that would not necessarily impact a water right but that's not what it did here and that's i'll find i'll find that at 364 that's the i would point out so 364 uh also your honor the the uh service are at the federal government supplements at pages 6 and 18 um and uh pages i guess 363 to 364 of the decision document is when um the service explains that it is taking to account the costs of ensuring access to water using specific cost um estimates that were provided by the forest service and using layers of conservative assumptions it's simply not based on the record before the service that there would be some additional um cost of potentially taking a water right um when this service was already factoring in the cost of securing access to water um your honors if i could just touch briefly on the new mexico cattle issue unless the court would wish me to address something else and in particular because you didn't address guitars in your brief i'd be curious to know your response on that absolutely your honor so gutierrez like the denise robles case that came before it deals with when an agency can um retroactively apply that is applied to completed conduct uh interpretation of a statute that conflicts with a judicial interpretation um i would say gutierrez is not relevant here for two reasons um the first is that there is no retroactive application um at issue here the critical habitat designation is entirely prospective this case is not an enforcement case um that applies to any prior habitat or excuse me prior conduct and um gutierrez is not applicable to and this court has never applied it to a facial challenge to a prospective agency rule which is what we're dealing with here well the question is retroactive to what and you're you're talking about the rule but doesn't gutierrez talk about retroactive to the 10th circuit's approval of that rule which would be this court's opinion so i think again you know even assuming that you know gutierrez is sort of only really been applied in this in a very particular um context and i'll try to go quickly because i see that i am coming up on the intervener's time here uh but even assuming that it sort of applies outside of that specific immigration context this is not an enforcement case i think that kind of argument could potentially be relevant if there was sort of a particular enforcement action that was taken against someone in the period between um a rule coming out and uh and a judicial decision being made but that's not what we have here the other reason that gutierrez is not applicable is you know this court doesn't even need to get into those issues of retroactivity and how far that case applies outside of the only context it's been applied in um is that this is not a case in which the service is is um is overturning a judicial interpretation of the statute for the reasons that we've said in the brief the decisions the agency's actions here are fully consistent with new mexico cattle growers it's just that the facts are changed here such that the predicate for the new mexico cattle decision is no longer present that is not a judicial overturning brand x kind of situation that is simply distinguishing relevant precedent from the facts at hand for those reasons your honor we would ask the court to uphold the decision below and i will turn over to the interveners all right mr shannon good morning with the court's permission i'd like to focus on remedy but before i do judge tim kovich i wanted to point out one more spot in the record where you can see that the fish and wildlife service looked at the impacts of stock water rights and how they may be addressed and you can find that at 5 30 in volume 3 there they discuss in a little bit more detail the practices that they're going to undertake namely providing cattle lanes to ensure that the ranchers still have access to water in their allotments and that again i think the underlying concern is the the water rights issue is a is an issue of access to water it's not access to water in a very specific spot and so to the extent that the ranches suffer any injury because they're forced to deviate their practices i think that that was captured in the u.s fish and wildlife services analysis and the reductions of uh aums in the economic impact analysis but turning briefly to remedy if this court were to rule in favor of the ranchers this court has recognized that when equity demands a regulation can be left in place on remand and here given the endangered status of the new mexico meadow jumping mouse equity demands that the regulation be left uh in place during any remand it's really hard to overstate just how endangered the new mexico meadow jumping mouse is of the 29 known remaining populations none of them are known to be of sufficient size to be adequately resilient and require active management of things such as grazing 11 of the populations since 2011 have been shown to be decreasing and one of the primary threats facing the new mexico meadow jumping mouse is grazing the u.s fish and wildlife services itself noted it as the primary threat in five out of eight of the critical habitat units and in the subunits uh grazed by the ranchers and the record also why wouldn't why wouldn't why wouldn't that why wouldn't the consultation um requirement um adequately protect the um occupied areas um if we if we did vacate i think uh that there are many protections provided by the critical habitat designation uh in addition to those provided by listing um which the service now recognizes since it has changed its regulations and and recognizing the difference between jeopardy and adverse mod um namely one of the one of the differences is that when you're looking at a jeopardy analysis there first has to be a determination that the species is actually there but when you have a critical habitat designation you can occupy critical habitat designation you don't have to make that initial determination you already know that the habitat is there and so you automatically engage in consultation also in this case there's a significant amount of unoccupied habitat in and around the smaller pockets of occupied habitat and so uh that consultation looks at the the downstream effects that may occur from impacts to the unoccupied habitat onto occupied habitat and i see i'm out of time but i'd be happy to answer any other questions otherwise we would ask that this court any other questions judge mcure judge phillips anything else all right council hearing none um case shall be submitted your excuse and we appreciate the arguments this morning